# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 7, 2013

## STATE OF TENNESSEE v. MARQUON L. GREEN

### Direct Appeal from the Circuit Court for Madison County
### No. 11-302    Roy B. Morgan, Jr., Judge

### No. W2012-01652-CCA-R3-CD  - Filed September 10, 2013

A Madison County Circuit Court Jury convicted the appellant, Marquon L. Green, of aggravated robbery, and the trial court sentenced him as a Range I offender to ten years to be served at 85%.  On appeal, the appellant contends that the evidence is insufficient to support the conviction.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Jeremy B. Epperson (on appeal) and Susan Korsnes (at trial), Jackson, Tennessee, for the appellant, Marquon L. Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; James G. Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, Courtney Echols, the victim, testified that in February 2011, she was a student at Lane College and lived in a dormitory on campus.  About 11:00 a.m. on Saturday, February 5, the victim walked from her dormitory to the library.  The library was closed, so the victim walked to her car in order to leave campus.  While the victim was walking, she was talking on her BlackBerry telephone.  However, by the time she got to her car, she had

stopped talking on her phone. The victim said that she "checked her surroundings" and that a man walked up to her, pointed a gun at her chest, and demanded her purse. She described the weapon as "[a] little black gun" and said that "[t]he front part . . . was like a silver round." The victim stated that she was scared and that the man told her, "I'm not going to shoot you. Just give me your purse." The victim gave him her Coach purse, which contained a pink Nano iPod, a Kodak digital camera, personal identification, a computer USB cord, and "sentimental items." She said that she tried to walk back to her dorm but that he told her to get into her car. She said that before she could get into her car, he told her, "I know you have a phone. Give me your phone." The victim took her phone out of her right jacket pocket, gave it to him, and tried to walk back to her dorm again. However, he told her to get into her car and walked away. The victim said that she had never seen the man prior to February 5, 2011, and that the incident lasted three to four minutes.

The victim testified that she got into her car and drove off campus to a friend's home in the Hermitage Apartments. She telephoned her mother, the police, and the college. The victim described the robber to police as five feet, three inches tall with a small build and a dark-skinned complexion. She told them he was wearing a white skull cap, a navy blue jacket with gray lining, dark pants, and white tennis shoes. She testified that the robber was standing about two feet away from her during the robbery and that "[t]he main detail that I knew it was him was his eyebrows." A couple of days after the robbery, the victim viewed a photograph array at the police department, selected the appellant's photograph, and identified him as the robber. The victim also identified the appellant at trial as the robber.

On cross-examination, the victim identified the photograph array and acknowledged that only three of the six photographs showed dark-skinned men. She also acknowledged that she told the police the robber had a medium, not small, build and weighed one hundred seventy-five pounds. She said that after the robbery, the appellant walked toward Middleton Street. On redirect examination, the victim testified that she had "[n]o doubt" the appellant was the robber.

Officer George Massey of the Jackson Police Department (JPD) testified that on the morning of February 7, 2011, he encountered the appellant, stopped his patrol car, and got out to talk with the appellant about a matter unrelated to this case. After speaking with the appellant, Officer Massey arrested him and transported him to the Madison County Criminal Justice Center. Officer Massey notified other officers that they should speak with the appellant about this case.

Sergeant Alberto Colon of the JPD testified that he investigated the robbery. Based on the victim's description of the robber, a BOLO, be-on-the-lookout, was issued. On February 7, Sergeant Colon learned that Officer Massey had arrested the appellant. Sergeant

-2-

Colon prepared a photograph array containing the appellant's photograph and showed it to the victim. She identified the appellant as the robber and signed the back of his photograph. Sergeant Colon spoke with the appellant and wrote out his statement. In the statement, the appellant said he was "hanging out" at his sister's house all day on February 5, that he did not know why the victim had selected his photograph, and that "I guess I fit the description of [the] dude that robbed her." Sergeant Colon gave the appellant the opportunity to read and correct his statement, and the appellant signed the statement.

On cross-examination, defense counsel questioned Sergeant Colon about his using only three photographs of dark-skinned men in the photograph array. Sergeant Colon stated, "That's because of the lighting. . . . It's three of each. That's six. We can do the photo lineups that way. . . . As far a complexion. . . . We go by facial features." On redirect examination, Sergeant Colon testified that on February 5, he showed the victim a "mug book" but that she did not identify anyone. However, the victim identified the appellant's photograph in the array on February 7.

Investigator Aubrey Richardson of the JPD testified that on February 8, 2011, he spoke with the appellant about the robbery and took the appellant's statement. Officer Richardson read the statement to the jury in which the appellant said the following:

> Saturday I took a phone Black Berry and a camera -- a Kodak camera. Saturday I had a black and gray 22 pistol and I approached her. She was talking on the phone and standing by her car. I robbed her for her phone and the camera and I ran off.
>
> I sold the camera to a female in Lincoln Courts. I sold the gun right after the robbery. And I sold the Black Berry to the Arab's on Hays Street at the store. I robbed the girl Saturday.

The appellant signed the statement.

On cross-examination, Investigator Richardson testified that he tried to convince the appellant to cooperate. Investigator Richardson said he told the appellant that by giving the statement, "the Courts would look at his cooperation in it." However, Investigator Richardson did not tell the appellant that the appellant would be charged with a lesser offense for his cooperation. At the conclusion of Investigator Richardson's testimony, the State rested its case.

The appellant testified that on February 5, 2011, he went to a barber shop to get his hair cut. After he left the barber shop, he walked through the Lane College campus. As he

was walking on Lane Street to his sister's house, he saw the victim in a parking lot. The victim was standing by her car and was talking on a telephone. The appellant said that the victim was holding her purse in her hand and that he "snatched it." He said he also "got her phone from her" and ran toward Middleton Street. He said that he did not use a gun and that he did not say anything to the victim. The appellant denied telling Investigator Richardson that he had a gun and said that he signed his statement because Investigator Richardson told him that signing the statement "would be the difference between [him] getting charged with theft of property and [him] getting charged with aggravated robbery."

On cross-examination, the appellant acknowledged that he did not always tell the truth and said that he would lie to help himself, "[d]epending on how serious it is." He acknowledged that aggravated robbery was a serious charge and said that "[a] gun makes the situation serious." He acknowledged that he lied to Sergeant Colon about being at his sister's house on February 5. He said he told Investigator Richardson that he took the victim's purse but did not tell the officer that he took the victim's BlackBerry and Kodak camera. He said that most of the contents of the victim's purse "went in the garbage" but that he kept her telephone, camera, and money. The appellant said he sold the phone to "[s]omebody on the street" and used the money to buy some "weed." The appellant said he signed his statement to Investigator Richardson because the officer told him that was the only way he could get charged with theft of property. The appellant said that he would lie to "[a] bunch of people" but that he was not lying to the jurors because they had his life in their hands. The appellant said he stole from the victim but did not rob her. At the conclusion of the appellant's testimony, the jury convicted him as charged of aggravated robbery.

## II. Analysis

The appellant contends that the evidence is insufficient to support the conviction. Specifically, he contends that the victim's identification of him from the photograph array is unreliable because she had never seen him prior to the robbery, the incident lasted only three to four minutes, and three of the photographs in the array did not match the suspect's description. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the

evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery as charged in this case is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103.

Taken in the light most favorable to the State, the evidence shows that on the morning of February 5, 2011, the appellant approached the victim as she was about to get into her car. He pointed a gun at her and demanded her purse and phone. The victim gave the items to him, and he ran away. Two days later, the victim viewed a photograph array containing the appellant's photograph and identified him as the robber. The appellant gave a statement on February 8 in which he said he used a pistol to rob the victim. Although the appellant claimed at trial that he did not use a gun during the robbery and claims on appeal that the victim's identification of him is unreliable, the jury, as was its prerogative, obviously accredited the victim's testimony and resolved any discrepancies in favor of the State. Therefore, we conclude that the evidence is sufficient to support the conviction.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE